Fourth Buckingham Community, Inc. v. Commissioner.
Fourth Buckingham Community, Inc. v. Commissioner
Docket No. 21560.
United States Tax Court
1950 Tax Ct. Memo LEXIS 269; 9 T.C.M. (CCH) 129; T.C.M. (RIA) 50047; February 23, 1950
*269 Lawrence S. Lesser, Esq., 1616 K St., N.W., Washington, D.C., for the petitioner. Paul E. Waring, Esq., for the respondent. TURNER Memorandum Opinion TURNER, Judge: The respondent determined a deficiency in excess profits tax of $7,892.45 against the petitioner for the fiscal year ended September 30, 1942. The only question for determination is the amount of petitioner's borrowed capital under section 719 (a) (1) of the Internal Revenue Code. The facts have been stipulated and are found as stipulated. [The Facts] Petitioner is a corporation organized and existing under the laws of the state of Virginia and has its principal office at 313 North Glebe Road, Arlington, Virginia. It filed its return for the taxable year with the collector for the district of Virginia. During the fiscal years ended September 30, 1941 and September 30, 1942, petitioner was engaged in the business of building, owning and operating rental housing projects, more particularly, multiple dwelling units subdivided into flats or apartments, of the housing development known as Buckingham Community, in Arlington County, Virginia. On February 25, 1941, petitioner as *270 proposed mortgagor, along with the Prudential Insurance Company of America, sometimes herein referred to as Prudential, as proposed mortgagee, filed an application with Federal Housing Administrator for mortgage insurance in the principal amount of $985,000. The money to be borrowed from Prudential was to be used for the purpose of building an additional multiple dwelling unit of Buckingham Community. On April 8, 1941, the Federal Housing Administrator issued his commitment for insurance to cover the loan for the purpose stated but in an amount not to exceed $950,000. On April 14, 1941, five instruments or agreements were signed and executed by various of petitioner, Prudential, the Federal Housing Administrator, trustees under the mortgage, and Geran Construction Company, Inc., covering the loan by Prudential and the terms thereof, the note by petitioner, the transfer to trust securing the loan, the contract of mortgage insurance and the construction contract. These agreements as a whole constituted the contract or contracts between the parties and fixed the rights, obligations, and duties of the parties by and between each other. They were inter-related and interdependent. By *271 the contracts and agreements of April 14, 1941, the petitioner, as borrower, became obligated under the note to Prudential, as lender, for not to exceed $950,000 as from time to time various sums were advanced and paid over to the contractor or other properly designated parties pursuant to the terms of the Building Loan Agreement and the Construction Contract. As the construction work progressed the contractor was authorized to make application for payments under the contract. The application was to be verified by the affidavit of the contractor's President and was to be addressed to the petitioner requesting payment for work done since the last such application and for moneys and equipment actually put in place or reasonably required in the progress of the work and suitably stored at the site. Among other things the application was to state (a) that the sum of money requested was then payable pursuant to the terms of the construction contract, (b) that the work was progressing in conformity with plans and specifications and that the work performed had been approved by all public authorities having jurisdiction thereover, (c) that all materials and fixtures then to be paid for had *272 either been properly furnished and installed or were reasonably required in the progress of the work and suitably stored at the site, (d) that such work and material had not previously been made the basis for payment, and (e) that the application, statements and representations therein were made for the purpose "of inducing the Administrator to approve and insure the advances therein applied for and for the additional purpose of enabling the borrower to obtain the advances from the lender * * * all with the knowledge that such statements and representations will be transmitted by the borrower to the lender and the Administrator and relied upon by said lender in advancing to the borrower a sum of money and by the Administrator in approving such advance and issuing insurance thereon." It also further required that the application be approved by the architect by endorsement stating that all prior work and the work, labor and materials then to be paid for were satisfactory to him. The Building Loan Agreement also provided that the application of the contractor when concurred in by the petitioner, the borrower, by an affidavit of its President, or such other official as the Federal Housing *273 Administrator might specify, was to constitute the petitioner's "application for an advance" under the Loan Agreement. Within three days after the receipt by the Administrator of such application he was to notify the lender thereof by forwarding said application to the lender with a signed statement to the effect that the sum of money covered therein when advanced by the lender would constitute a part of the principal of the mortgage within the meaning of the Mortgage Insurance Contract. Upon receipt of the application from the Administrator the lender, provided its appraiser certified that the conditions of the agreement had been complied with, was to issue its checks or drafts to the joint order of the petitioner and the person or persons shown by the application to be entitled to the money covered therein. The said checks or drafts were to be delivered to the borrower not later than the 10th day of each successive month until all advances required by the agreement were made and the said checks or drafts when so delivered by depositing the same in the United States mails, properly addressed to the borrower, were to constitute: "(a) an indebtedness of the Borrower in the amount *274 thereof evidenced by the Note, the Mortgage and this instrument, "(b) an advance to the Borrower of part of the principal of the mortgage approved for insurance within the meaning of the Mortgage Insurance Contract." The applications for payment were to be made pursuant to the schedule of payments agreed upon which permitted the contractor when all conditions had been met to receive payment up to 90 per cent of the amount shown to be due and owing. The payment of this 90 per cent was "exclusive, however, of contractor's cash and stock fees and Contingency Fund, if any." The Contingency Fund was to be $17,534 in amount and was not to be obligated to the contractor but was to cover work and materials, if any, which the contractor was not under obligation to furnish. Upon the delivery of checks or drafts Prudential as the lender was required to obtain an appropriate receipt from the petitioner with an acknowledgment "of the amount of total advances to date of such delivery" and to forward "a duplicate original thereof to the Administrator." In the event of certain contingencies including default, unsatisfactory lien, failure of compliance with the construction contract, violation *275 of law or municipal rules, assignment of interest by the borrower "all obligations on the part of the Lender to make further advances on account of the loan and all obligations on the part of the Administrator to approve for insurance further advances to be made or to insure further advances made on account of the loan" were to cease. The mortgage note executed by petitioner to cover the advances made recited on its face a principal sum of $950,000. Interest was to be paid only on advances made prior to any interest payment dates. The note specified that it was secured by a first Deed of Trust of even date. The Deed of Trust was executed on April 14, 1941 and carried a quotation of the note in full. It also was provided therein that the Deed of Trust was made pursuant to the Building Loan Agreement by and between petitioner and Prudential executed that day. The Contract of Mortgage Insurance likewise executed on April 14 and one of the various agreements entered into that day, provided that by the execution thereof "the Administrator insures (but only to the extent of such advances, as may be made by the mortgagee with the written approval of the Administrator) a certain Deed *276 of Trust * * * dated April 14, 1941 executed by Fourth Buckingham Community, Inc., in favor of the Prudential Insurance Company of America, Mortgagee" covering the property herein involved. Thereafter the Geran Construction Co., Inc., entered upon the performance of its obligations under the construction contract and in due course it submitted its applications to petitioner for payments pursuant to the terms and conditions above referred to. Upon approval by petitioner and acceptance by Prudential, Prudential pursuant to the Building Loan Agreement made the following advances to petitioner: June 10, 1941
$193,319.00
July 10, 1941
156,902.50
August 15, 1941
195,144.97
September 19, 1941
111,100.00
October 15, 1941
85,721.34
November 18, 1941
69,788.59
December 19, 1941
89,033.77
March 18, 1942
$ 27,421.83
November 10, 1942
6,568.00
Total
$935,000.00
The final payment of $6,568.00 on November 10 was paid pursuant to the proper statement showing that construction had been completed and that Prudential would be required to make no further advance under the agreements heretofore described. [Opinion] It is the claim of the petitioner that from *277 and after April 14, 1941, the date of signing the note in favor of Prudential, it had borrowed capital under section 719 (a) (1) of the Internal Revenue Code[1] in the amount of $950,000. It makes this claim even though it received no advances whatever from Prudential until June 10, 1941, Prudential was not obligated to advance or pay over any amount prior to that date and never at any time advanced more than $935,000. The sole reason for the claim seems to be the fact that the stated amount of the note was $950,000. Counsel for petitioner concedes that he has found no case in point. He has, however, prepared a lengthy discussion and cited many cases, articles, and treatises which it is claimed add color and support to the contention that the amount of borrowed capital of this petitioner was the full $950,000. *278 Noting the concession of the petitioner that there are no decided cases in point, we think the probable reason for such absence of cases is because the proposition advanced is without merit. To determine the rights, duties and obligations of the petitioner and other parties involved the agreements of April 14, 1941 must be read together. They were interrelated and interdependent. From these it is plain that there was no lending by Prudential and no borrowing by petitioner except as advances were made and the amount of borrowing at any given date was the total of advances up to that time. There was no obligation on the part of Prudential to loan money except as the work progressed and the conditions agreed upon in the various instruments had been met and then the amount of the loan was not in any lump sum stated on the face of the note or any other of the said documents but was the amount which would properly cover the cost of labor and materials since the last advance made. On the facts here the $950,000 shown on the face of the note merely measured the maximum loan that could be made. We know of no theory on which such facts would support a conclusion that there was at any time *279 owing by petitioner under these agreements a principal sum in excess of the total of the advances made. The advances and the dates thereof as stipulated supply the necessary factual basis for computing the borrowed capital of the petitioner herein. Decision will be entered under Rule 50. Footnotes
1. INTERNAL REVENUE CODE: Sec. 719. (a) Borrowed Capital. - The borrowed capital for any day of any taxable year shall be determined as of the beginning of such day and shall be the sum of the following: (1) The amount of the outstanding indebtedness (not including interest) of the taxpayer which is evidenced by a bond note, bill of exchange, debenture, certificate of indebtedness, mortgage, or deed of trust, * * *↩